UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROMAN R. TEJEDA-ESTRELLA, A45-869-488,

                    Petitioner,

           -v-                                        12-CV-972-JTC

ERIC H. HOLDER, Jr., Attorney General,
and TODD TRYON, Asst. Field Office Director
Immigration and Customs Enforcement,

                    Respondents.

_____

## INTRODUCTION

        Petitioner Roman R. Tejeda-Estrella, an alien under a final order of removal from

the United States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2241 seeking release from detention in the custody of the United States

Department of Homeland Security, Immigration and Customs Enforcement (collectively,

"DHS"), pending the execution of a final immigration order of removal issued against him.

Item 1.  As directed by this court's order entered on October 26, 2012 (Item 3), respondent[1]

has submitted an answer and return (Item 5), along with an accompanying memorandum

of law (Item 6), in opposition to the petition, and petitioner has submitted a reply (Item 7).

For the reasons that follow, the petition is denied.

_____

        [1]The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director,
Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal
Detention Facility, as he is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also*
§ 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person
detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of the Dominican Republic, was admitted to the United States as a lawful permanent resident at New York, New York, on or about June 25, 1997.  *See* Item 5-2 (Payan Decl., Exhibit A), pp. 2, 20.

According to DHS records, between February 2007 and June 2010, petitioner was convicted of several different state law violations, including the following:

- On or about February 21, 2007, petitioner was convicted in New York State Supreme Court, Bronx County, on a charge of Criminal Possession of a Weapon in the 3rd Degree.  He was sentenced to 5 years probation.

- On or about January 9, 2009, petitioner was convicted in New York County Criminal Court on a charge of Criminal Possession of a Controlled Substance in the 7th Degree.  He was sentenced to 5 days incarceration and 6 months suspension of his driver's license.

- On or about November 15, 2009, petitioner was convicted in Bronx County Criminal Court on a charge of Resisting Arrest.  He was sentenced to 5 days incarceration.

- On or about May 19, 2010, petitioner was convicted in New York County Criminal Court on a charge of Attempted Criminal Possession of a Controlled Substance in the 5th Degree. He was sentenced to 2 years incarceration, 2 years supervised release, and 6 months suspension of his driver's license.

- On or about June 29, 2010, petitioner was convicted in Bronx County Criminal Court on charges of Criminal Possession of a Controlled Substance in the 7th Degree; Criminal Possession of a Weapon in the 4th Degree; and

violation of probation.  He was resentenced to time served (7 months and 12 days).

Item 5-2, pp. 4-5, 20.

On November 16, 2009, while he was incarcerated at the Riker's Island Correctional Facility in Queens, New York, petitioner was identified by DHS officers from the New York Field Office as an alien amenable to removal proceedings and, upon verification of his immigration status, an immigration detainer was lodged against him at the correctional facility. *Id.* at 4.

In October 2010, while under custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at the Lakeview Shock Incarceration Facility in Brocton, NY, petitioner was served with a Notice to Appear ("NTA") dated October 5, 2010, directing him to appear for removal proceedings before an Immigration Judge at a time and place to be determined. *Id.* at 18.  The NTA charged petitioner with being removable from the United States pursuant to Immigration and Nationality Act ("INA") § 237(a)(2)(B)(i), as an alien convicted of a controlled substance offense, and pursuant to INA § 237(a)(2)(C), as an alien who has been convicted of "purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell offer for sale, exchange, use, own, possess, or carry, in violation of any law, any weapon, part or accessory which is a firearm or destructive device, as defined in [18 U.S.C. § 921(a)]." *Id.* at 20.

On July 22, 2011, upon his release from DOCCS' custody, petitioner was received into DHS custody pursuant to the previously-lodged immigration detainer. *Id.* at 5.  On November 15, 2011, Immigration Judge Steven J. Connelly found petitioner removable as

-3-

charged, and ordered him removed from the United States to the Dominican Republic. *Id.* at 15-16. Petitioner appealed the Immigration Judge's decision to the Board of Immigration Appeals ("BIA"), and the order of removal became final on April 10, 2012, when the BIA dismissed petitioner's appeal. *Id.* at 11-14.

On April 16, 2012, DHS sent a presentation packet to the Consulate General of the Dominican Republic ("Consulate") in New York, New York, requesting that a travel document be issued for petitioner's removal. *Id.* at 5, 21. Petitioner was interviewed by telephone by a Consulate representative on April 23, 2012, and the Consulate issued a travel document for petitioner the next day, on April 24, 2012. *Id.* at 5, 22. Thereafter, DHS made travel arrangements for petitioner to be removed from the United States to the Dominican Republic on May 3, 2012. Item 5-1, ¶ 14.

On April 26, 2012, petitioner filed a petition in the Second Circuit Court of Appeals seeking review of the BIA's denial of his appeal from the removal order, along with a motion for stay of removal. *See id.* at 24. The Second Circuit dismissed the petition by order entered October 9, 2012, and on November 28, 1012, petitioner filed a motion for reconsideration. *See id.* at 25.

Meanwhile, on May 21, 2012, DHS served petitioner with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that petitioner was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States. *Id.* at 8-10. The warning form advised petitioner of penalties under INA § 243 for conniving or conspiring to prevent or hamper his departure from the United States, and also advised him that, pursuant to INA § 241(a)(1)(C), failure

to comply or provide sufficient evidence of his inability to comply may result in the extension of the removal period and subject him to further detention. *Id.* Petitioner refused to sign the warning form and instruction sheet. *Id.*

In accordance with immigration regulations, DHS conducted a 90-day review of petitioner's custody status and, on July 9, 2012, issued a "Decision to Continue Detention" which stated that, based upon the totality of information available, DHS had determined that petitioner would pose a significant threat to the community and a risk of flight if he were to be released from custody. *Id.* at 4-6.  Further review of petitioner's custody status was conducted by DHS Headquarters Custody Management Unit ("HQCMU") in October 2012, including an in-person interview of petitioner at the Buffalo Federal Detention Facility in Batavia, New York, where petitioner is currently detained.  Following completion of the file review and interview, petitioner was notified on October 17, 2012, that DHS once again determined to continue his detention in DHS custody. *Id.* at 2-3.

Petitioner filed this action on October 15, 2012, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in DHS custody since April 10, 2012, when the Immigration Judge's order of removal became final, is unlawful because it has exceeded the "presumptively reasonable" six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## **DISCUSSION**

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order.  In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i)  The date the order of removal becomes administratively final.
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory.  *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien.").  The statute also authorizes the Attorney General to continue detention of criminal aliens–*i.e.*, aliens (like petitioner) ordered removed due to conviction of a crime–beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …."  INA § 241(a)(6).[2]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process.  The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States.  *Zadvydas*, 533 U.S. at 699-700.  Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …."  *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable

---

[2]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

future" conversely would have to shrink.   This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal.   Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country willing to accept the alien." 8 C.F.R. § 241.13(d)(1).  The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents."  8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

[T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.  Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the

alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released.  8 C.F.R. § 241.13(g)(1).  However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination.  *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on July 22, 2011 for detention pending completion of immigration removal proceedings, as authorized by INA § 236.[3]  *See* Item 5-1, ¶ 9.  This detention continued until April 10, 2012, when the Immigration Judge's order of removal became final upon the BIA's dismissal of petitioner's appeal.  *See* 8 C.F.R. § 1241.1(a) (order of removal becomes final upon dismissal of appeal by BIA).

---

[3]Petitioner has not challenged his pre-removal order detention under INA § 236.  *See Persaud v. Holder*, 2011 WL 5326465, at *2 (W.D.N.Y. Nov. 3, 2011) (detention pursuant to INA § 236 during period prior to pre-final order of removal did not violate due process; citing *Demore v. Kim*, 538 U.S. 510, 531 (2003)).

After the order of removal became final, petitioner's detention was authorized by INA § 241(a), and the removal period commenced.  DHS promptly secured a travel document for petitioner's removal, and made arrangements for petitioner to be removed from the United States to the Dominican Republic on May 3, 2012.  Item 5-1, ¶¶ 12-14.  Then, on April 26, 2012, petitioner filed his petition in the Second Circuit for review of the BIA's dismissal of his appeal from the removal order, along with a motion for a stay of removal pending the circuit court's ruling.  *Id.* at ¶ 15.

Numerous decisions by the federal courts within the Second Circuit have held that the filing of a petition for circuit court review of the final order of removal, accompanied by a motion for stay of removal, triggers the application of a "forbearance policy" recognized by agreement between DHS and the Second Circuit under which DHS has agreed not to effectuate the removal of an alien while he or she has a petition for review pending before the circuit court.  *See, e.g., Persaud v. Holder*, 2011 WL 5326465, at *1 (W.D.N.Y. Nov. 3, 2011) (filing of petition for circuit court review of final order of removal along with motion for stay of removal triggers "forbearance policy"); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 197 (W.D.N.Y. 2010) (even though circuit court had not "formally" ruled on motion to stay accompanying petition for review of BIA's dismissal of appeal from removal order, forbearance policy is "the equivalent of a court-ordered stay of removal"); *Shehnaz v. Ashcroft,* 2004 WL 2378371, at *2 (S.D.N.Y. Oct. 25, 2004) (where circuit court had not yet ruled on alien's requests to stay removal and for review of BIA's order, a stay of removal was in effect pursuant to Second Circuit forbearance policy); *cf. Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) ("consistent pattern" of filing petition for circuit court review

-10-

accompanied by motions to stay removal triggered application of Second Ciurcuit's forbearance policy; petitioner's "self-inflicted wound should not establish grounds for [his] *Zadvydas* claim") (citing *Doherty v. Thornburgh*, 943 F.2d 204, 205 (2d Cir. 1991) (petitioner cannot rely on delays resulting from litigation strategy to claim that prolonged detention violates substantive due process).   Pursuant to this policy, the removal period which began on April 10, 2012, was "effectively stayed" as of April 26, 2012, when petitioner filed his petition for review and motion for stay of removal with the Second Circuit.  *Luna-Aponte*, 743 F. Supp. 2d at 190.

Accordingly, because the detention challenged by the habeas petition in this action has been prolonged by petitioner's own pursuit of judicial review of the final order of removal, the duration of his detention cannot be found to constitute a violation of his rights under the due process clause of the Fifth Amendment.  *See Doherty*, 943 F.2d at 211 (refusing to find eight-year detention unconstitutional where alien's pursuit of judicial and administrative review caused the delay in removal); *Dor v. District Director, INS*, 891 F.2d 997, 1002 (2d Cir. 1989) (same, but with four year detention); *see also Khaleque v. Department of Homeland Sec.*, 2009 WL 81318, at *3 (W.D.N.Y. Jan. 9, 2009) (denying alien's habeas petition upon finding that alien "elected to file a petition for review and a motion for a stay of removal" which "acted to prevent his removal until the Second Circuit issued its mandate").

Alternatively, considering petitioner's habeas challenge under the due process standards set forth in *Zadvydas*, petitioner must first "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."

*Zadvydas*, 533 U.S. at 701.  Only if he makes this initial showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut that showing."   *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*.  The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to the Dominican Republic in the reasonably foreseeable future.  He simply alleges that the Consulate "ha[s] not issued any travel documents and there is no certainty as to when, if ever, such papers will be issued …." Item 1, ¶ 11.  However, as discussed above, DHS records show that the Consulate has, in fact, issued a travel document for petitioner, and travel arrangements for his removal were made by DHS but were cancelled when the petition for review and request for stay of removal were filed with the Second Circuit.  Item 5-1, ¶¶ 14-15.

In addition, the available statistical evidence reveals that in recent years, DHS has successfully repatriated significant numbers of aliens to the Dominican Republic, indicating that there are no apparent institutional barriers to petitioner's removal.  For example, DHS reports show that in fiscal year ("FY") 2009, a total of 3,580 aliens were repatriated to the Dominican Republic; in FY 2010, 3,373 aliens were repatriated to the Dominican Republic; and in FY 2011, 2,860 aliens were repatriated to the Dominican Republic.  *See* DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2011-3.  This evidence, considered along with the circumstances of

the DHS's efforts prior to forbearance, provide a reasonable basis for DHS's expectation

that removal can be accomplished within the reasonably foreseeable future following final

resolution of petitioner's request for reconsideration of the Second Circuit's dismissal of his

petition for review, after which time the necessary travel arrangements may be completed

for petitioner's release from DHS custody and his repatriation to the Dominican Republic.

Significantly, petitioner has provided no evidence to contradict this expectation, or

to otherwise establish his compliance with the requirements of the DHS regulations

described above.   Instead, petitioner relies solely on the fact that his detention has

exceeded the presumptively reasonable six-month period established in *Zadvydas*.  *See*

Item 1, ¶¶ 10-13, 29-36.   However, several cases decided within this district have found

the habeas petitioner's assertion as to the unforeseeability of removal, supported only by

the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate

no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*.  *See,*

*e.g., Khaleque*, 2009 WL 81318, at *4 (petitioner failed to meet initial burden where the

only evidence relied upon was the fact that the Consulate had not responded positively to

the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d

301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no

evidentiary proof in admissible form to suggest that travel documents would not be issued);

*Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to

meet initial burden where he "merely ma[de] the general assertion that he will not be

returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration &*

*Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who

did not present evidence that his country would not provide travel documents did not meet initial burden of proof.); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, and that petitioner may not rely on the delay resulting from his request for circuit court review of the final order of removal to claim that his prolonged detention violates substantive due process. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   4/10/013
p:\pending\2012\12-972.2241.apr9.2013

-15-